IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Widman's Candy Co., a Minnesota corporation, ) ) ) Plaintiff, ) ) vs. ) ) Jacqueline Knutson, individually and d/b/a ) Café Chocolat; and Freedom Enterprises, ) Inc., ) ) Defendants and Third-Party ) Plaintiffs, ) ) vs. ) ) Martin Riske and MJR Candy Shop, Inc., ) ) Third-Party Defendants and ) Fourth-Party Plaintiffs, ) ) vs. ) ) James L. Peters, ) ) Fourth-Party Defendant. ) | **MEMORANDUM OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Civil No. 3:07-cv-13 |

Before the Court are Cross-Motions for Summary Judgment filed by Third-Party Plaintiffs Jacqueline Knutson ("Knutson") and Freedom Enterprises, Inc. ("Freedom Enterprises"), and Third-Party Defendants Martin Riske ("Riske") and MJR Candy Shop, Inc. ("MJR") (Docs. #50, #54). The Court has carefully considered the briefs and documents filed by the parties and now issues this memorandum opinion and order.

1

**SUMMARY OF DECISION**

The Court concludes that Riske and MJR did not sell the rights to use the Widman name, nor did they warrant or guarantee full ownership rights in any of the disputed property, and therefore they did not breach Sale and Purchase Agreement as a matter of law.  The Court further concludes that Riske and MJR are not required to defend or indemnify Knutson and Freedom Enterprises under the plain language of the Sale and Purchase Agreement.  Therefore, the Motion for Summary Judgment filed by Riske and MJR is GRANTED, and the Cross-Motion for Summary Judgment filed by Knutson and Freedom Enterprises is DENIED.

**FACTUAL BACKGROUND**

The third-party claims asserted by Knutson and Freedom Enterprises in this case arise from the sale of a candy-making business located in Fargo, North Dakota.  Although only these third-party claims are currently before the Court on cross-motions for summary judgment, an overview of the facts describing the interrelationship of all the parties is necessary to achieve a full understanding of the issues presented in this action.

### I.  An Overview of the Parties and Their Claims

Plaintiff Widman's Candy Co. ("Widman's") is a Minnesota corporation with its principal place of business, a candy store, located in Fargo, North Dakota.  Carol Widman Kennedy ("Widman Kennedy") is the owner and operator of the corporation, which does business under the trade name "Carol Widman's Candy Co."  Defendant Freedom Enterprises, a North Dakota corporation, also operates a candy store located in Fargo which does business under the name "Café Chocolat."  Defendant Jacqueline Knutson, a resident of North Dakota, is the sole owner and operator of Freedom Enterprises.

In February 2007, Widman's filed the instant action against Knutson and Freedom Enterprises. The gravamen of Widman's Complaint was that Knutson and Freedom Enterprises were impermissibly using distinctive trademarks, trade names, and domain names associated with the Widman brand of candy. Widman's asserted claims under federal law, including infringement of federally registered trademarks and violation of the Anticybersquatting Consumer Protection Act, as well as claims under state law such as deceptive trade practices and unfair competition. In the prayer for relief, Widman's sought money damages and other equitable relief, including an injunction enjoining Knutson and Freedom Enterprises from using the Widman name.[1]

Knutson and Freedom Enterprises filed a counterclaim against Widman's, asserting that they had purchased the rights to use the disputed trademarks, trade names, and domain names from MJR Candy Shop and Martin Riske. Knutson and Freedom Enterprises essentially alleged that Widman's was the party wrongfully using that intellectual property, and that Widman's had engaged in deceptive trade practices and false advertising, infringed on their rights, and committed defamation. They sought money damages and injunctive relief against Widman's.

Since the initiation of this lawsuit, Widman's has entered into a settlement with Knutson and Freedom Enterprises, and the claims between those parties have been dismissed with prejudice. However, the third- and fourth-party claims remain, all of which arise out of two separate sales of the same candy-making business. Knutson and Freedom Enterprises were the last purchasers and are the current owners of that business, now known as Café Chocolat. It is through this chain of sale that Knutson and Freedom Enterprises claimed the right to use the trademarks, trade names, and

---

[1] Widman's later decided not to seek economic damages from Knutson and Freedom Enterprises, but rather sought only exclusive use of the Widman name. See Dep. of Carol Widman Kennedy, Vol. II, at 170-71, 235-37 (Jan. 29, 2008).

3

domain names which were at issue in the dispute with Widman's. The second sale of the candy business, a transaction between sellers Riske and MJR and buyers Knutson and Freedom Enterprises, is at the heart of the third-party claims before the Court on these summary judgment motions. Therefore, an extended discussion of the history of that business and its different owners is warranted.

The Widman family began making homemade candy and operating candy stores in 1885. Since that time, various members of the Widman family have opened and operated independent candy shops in the North Dakota-Minnesota area. Carol Widman Kennedy, the owner of Plaintiff Widman's, is a direct descendent of the first Widman family candy makers. Widman Kennedy's grandparents opened a store called "Widman's Candy Shop" in Crookston, Minnesota in 1911, and her brother and his wife currently own and operate that store. Her parents also currently own and operate a candy store they opened in 1949, called "Widman's Candy Shop," in Grand Forks, North Dakota.

Both candy shops involved in this case, at least in their original form, were also opened and operated by members of the Widman family. In 1985, Widman Kennedy's sister Janet Peters, along with her husband James Peters, opened a candy store called "Widman's Candy Company" in Fargo, North Dakota. In preparation for the opening of this new candy store, Widman Kennedy's parents trained James Peters to be a candy maker. Janet and James Peters operated the store together for approximately six years, until their divorce in August 1991. In the divorce decree, James Peters acquired full ownership and operating rights in the candy store, and he continued to operate it after the divorce. In 1994, Widman Kennedy opened "Carol Widman's Candy Co.," the trade name for

Plaintiff Widman's, in Fargo, North Dakota. The two candy stores have coexisted in Fargo, in some form, since that date.

On July 21, 2001, James Peters, the Fourth-Party Defendant in this action, sold his candy business to MJR Candy Shop, acting through its president Martin Riske. Riske is a resident of North Dakota, and MJR is a former North Dakota corporation that had its principal place of business in Cass County. MJR, through Riske, owned and operated the business for approximately four years under the several different names with the word "Widman's" in them, including "Widman's Candy," "Widman's on Eighth," and "Widman's Coffee and Chocolate."

On June 16, 2005, Riske and MJR entered into a Sale and Purchase Agreement to sell the candy business to Freedom Enterprises, through its owner Knutson. After purchasing the business, Knutson renamed it to "Café Chocolat," and she began serving food and coffee in addition to candy. However, she also persisted in using names and other information associated with the Widman brand of candy in some respects, such as using the Internet domain name "www.widmanscandy.com," summarizing the Widman family history on the Café Chocolat website, and selling chocolate-covered potato chips under the name "Chippers" or "Chipperz."

Knutson's continued use of certain trademarks, trade names, and domain names associated with the Widman family brand of candy prompted the lawsuit filed by Plaintiff Widman's in February 2007. Knutson and Freedom Enterprises then filed a Third-Party Complaint against Riske and MJR. In the Third-Party Complaint, Knutson and Freedom Enterprises allege that to the extent Widman's claims against them are proven, Riske and MJR breached the Sale and Purchase Agreement ("Agreement") and thereby caused damages, and that Riske and MJR are required to

provide them with a defense and indemnity under the terms of that Agreement, including costs and attorney's fees.

Riske and MJR filed an Answer denying the allegations of the Third-Party Complaint, and also filed a Fourth-Party Complaint against James Peters ("Peters"), the initial seller of the candy business. In the Fourth-Party Complaint, Riske and MJR seek indemnification from Peters, to the extent MJR is held liable to Knutson and Freedom Enterprises. Peters, a resident of North Dakota, has not answered or otherwise appeared in this action. Therefore, the fourth-party claims asserted by Riske and MJR are not before the Court at this time. Rather, the third-party claims asserted by Knutson and Freedom Enterprises are the sole portion of the action which is before the Court on these cross-motions for summary judgment.[2]

## II. The Terms of the Sale and Purchase Agreement

The claims which Knutson and Freedom Enterprises have asserted against Riske and MJR, as well as Riske's and MJR's defenses to those claims, revolve around the language of the Sale and Purchase Agreement which effectuated the sale of the candy business between those parties. Therefore, a close examination of the terms of that Agreement is necessary.

The Agreement was executed by the seller, MJR acting through Riske, and the buyer, Freedom Enterprises acting through Knutson, on June 16, 2005. Section 1 of the Agreement

---

[2] It is axiomatic that federal courts are courts of limited jurisdiction. See Kessler v. Nat'l Enters., Inc., 347 F.3d 1076, 1080 (8th Cir. 2003) (quotation omitted). The Court clearly had subject matter jurisdiction over Widman's claims against Knutson and Freedom Enterprises, some of which involved federal questions. However, that portion of the case has settled, so the Court has an obligation to determine whether it has jurisdiction over the remaining third-party claims. There is no independent basis for jurisdiction, as no federal questions are raised in this action revolving around contract interpretation, and the parties are not diverse. However, the Court concludes it has ancillary jurisdiction over these third-party claims, so it is appropriate to retain and decide the action. See 6 Charles Alan Wright et al., Federal Practice and Procedure § 1444, at 340, 344 (2d ed. 1990) (stating that if the original action is settled before the ancillary claim is adjudicated, "[m]ost courts have held that jurisdiction over a third-party claim is not lost in these circumstances and the court, in the exercise of its discretion, either may proceed with the claim or dismiss it").

outlines the assets which were to be purchased and sold, and provides in relevant part:

>   Subject to Section 2 of this Agreement and the other terms and conditions hereinafter set forth, Seller agrees to sell, transfer, assign, convey and deliver to Buyer, and Buyer will purchase and accept the following assets and properties owned by Seller (together the "Purchased Assets"):
>   . . . .
>
>   5. All Seller's rights in the North Dakota "Chippers Candy" trade name and "Chipperz" trademark including rights in the North Dakota trademark and domain names http://widmans-chipperz.com, http://fargo-candy.com, and www.widmanscandy.com.
>
>   6. Goodwill and all related tangible and intangibles which Seller uses and all rights to continue to use the Purchased Assets in the conduct of a going business.

Grinolds Aff., Ex. K, at 1-2. Section 2 of the Agreement specifically lists those assets which were excluded from the sale, including the following provision: "The Purchased Assets do not include any assets not listed in Section 1, including without limitations the following excluded assets ('Excluded Assets'): . . . . 4. The trade names of MJR Coffee & Fine Chocolates and Widman's Candy." Grinolds Aff., Ex. K, at 2-3. However, section 13 of the Agreement, which provided that "Buyer does not have the right to use of the name 'Widman's Candy' in connection with the business sold hereunder," was crossed out and initialed by the parties. Grinolds Aff., Ex. K, at 8.

The Agreement also contains several different provisions which may be construed as relating to the condition of the assets sold and any warranties thereon. Section 5 of the Agreement provides as follows:

**SECTION 5. <u>NO LIABILITIES ASSUMED</u>.**

Unless otherwise specifically provided herein, Buyer will not assume any liabilities of Seller's business. Seller will sell all of the Purchased Assets free and clear of all liens, liabilities and encumbrances. Seller will be obligated to satisfy all obligations arising out of Seller's business prior to Closing.

Grinolds Aff., Ex. K, at 4-5.  Sections 10 and 11 of the Agreement govern the existence of any warranties on the assets sold, and those sections provide, in relevant part:

> **SECTION 10.  <u>NO WARRANTY ON CONDITION OF PURCHASED ASSETS</u>.**
>
> SELLER MAKES NO WARRANTY, EITHER EXPRESS OR IMPLIED, INCLUDING THE WARRANTY OF MERCHANTABILITY, RELATING THE [sic] CONDITION OF THE PURCHASED ASSETS OR THEIR SUITABILITY FOR BUYER'S BUSINESS.  ALL ASSETS SOLD UNDER THIS AGREEMENT ARE SOLD AS IS AND WITH ALL FAULTS.  BUYER AGREES THAT BUYER HAS HAD AMPLE OPPORTUNITY TO EXAMINE THE CONDITION OF THE ASSETS SOLD HEREUNDER AND HAS DETERMINED TO HIS OWN SATISFACTION THEIR CONDITION, AND THE PRICE PAID HAS BEEN ESTABLISHED ACCORDINGLY.   BUYER IS NOT RELYING ON THE REPRESENTATIONS OF SELLER OR SELLER'S AGENTS CONCERNING THE CONDITION OF ANY OF SELLER'S ASSETS IN ENTERING INTO THIS AGREEMENT.
>
> **SECTION 11.  <u>SELLER'S WARRANTIES AND REPRESENTATIONS</u>.**
>
> Seller warrants and represents to Buyer that:
> . . . .
> 4.  Seller has good and marketable title to the Purchased Assets, free and clear of all security agreements, mortgages, liens, pledges, charges or encumbrances.

Grinolds Aff., Ex. K, at 7-8.

The Agreement also includes a provision for indemnification by both the buyer and seller:

> **SECTION 12.  <u>INDEMNITY</u>.**
>
> Seller will defend, indemnify and hold Buyer harmless from any and all claims and liabilities, losses, expenses, damages, acts or failures to act, including reasonable attorney's fees and court costs, and costs that may arise as a result of any act or omission, or obligation which arose out of Seller's business done prior to the Closing.  Buyer will defend, indemnify and hold Seller harmless from any and all claims, liabilities, losses, expenses, damages, acts or failures to act, including reasonable attorney's fees and court costs, and costs that may arise as a result of any act or omission, or obligation which arose out of business done one [sic] or after the Closing.

Grinolds Aff., Ex. K, at 8.  Finally, Section 16 of the Agreement provides that it is the sole agreement between the parties regarding the sale of the business:

> **SECTION 16.  ENTIRE AGREEMENT.**
>
> This contract constitutes the sole and only agreement between Buyer and Seller respecting Seller's business and its assets for the sale and purchase described in this contract and correctly sets forth the obligations of Buyer and Seller to each other as of its date.  Any agreement or representations respecting said assets for its sale to Buyer not expressly set forth in this contract are null and void.  All representations, warranties and covenants in this agreement made by either party shall survive the closing of this transaction.

Grinolds Aff., Ex. K, at 9.

## DISCUSSION

Knutson and Freedom Enterprises have moved for summary judgment on their third-party claims against Riske and MJR.  In particular, Knutson and Freedom Enterprises contend that Riske and MJR breached the Sale and Purchase Agreement as a matter of law, and that Riske and MJR had a duty to defend them in the action initiated by Widman's, including the payment of costs and attorney's fees.[3]  Riske and MJR have cross-moved for summary judgment, arguing that Knutson is not entitled to any relief under the terms of the Agreement.  The parties agree that there are no genuine issues of material fact as to liability under the Agreement, and that the case is appropriate for decision as a matter of law.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v.

---

[3] Knutson and Freedom Enterprises also initially moved for summary judgment on the grounds that they were entitled to indemnification from Riske and MJR.  However, they have abandoned that claim in light of their settlement with Widman's, which involved Widman's paying them an undisclosed sum of money in exchange for their relinquishment of certain rights, including all rights to use the Widman name and the domain name www.widmanscandy.com.

9

Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). It is axiomatic that the evidence is viewed in a light most favorable to the non-moving party, and the non-moving party enjoys the benefit of all reasonable inferences to be drawn from the facts. See, e.g., Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (quotations omitted). If the moving party shows there are no genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing a genuine issue for trial. Donovan, 298 F.3d at 529.

A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The basic inquiry is whether the evidence presents a sufficient disagreement to require full consideration on the merits by a jury, or whether it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., 418 F.3d 820, 832 (8th Cir. 2005).

When the unresolved issues in a case are primarily legal rather than factual, summary judgment is particularly appropriate. Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995). However, although summary judgment may be an appropriate and useful tool to avoid useless and time-consuming trials, "[it] should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy." Vacca, 875 F.2d at 1339 (citations omitted).

As an initial matter, the Court notes that Riske has moved to dismiss all the claims against him on the grounds that he cannot be held liable in an individual capacity. Specifically, Riske argues he only signed the Sale and Purchase Agreement in a representative capacity for MJR, which

is the true party to the contract, and Knutson and Freedom Enterprises have shown no facts which would support piercing the corporate veil of MJR.  Knutson and Freedom Enterprises counter that because MJR is a dissolved corporation, they may be able to recover against Riske personally to the extent MJR is unable to satisfy any award in this lawsuit.  However, the Court need not resolve this issue, because the result in this case is the same as to both Riske and MJR under the terms of the Sale and Purchase Agreement, regardless of individual or corporate status.

### I.  Principles of Contract Interpretation

The primary issue presented in this case is the construction of the Sale and Purchase Agreement, particularly with regard to the warranty and indemnification provisions.  The parties agree that North Dakota law applies to the interpretation of the Agreement.

The language of a contract governs its interpretation if the language is clear and explicit and does not involve an absurdity.  N.D.C.C. § 9-07-02; Capital Elec. Coop., Inc. v. City of Bismarck, 2007 ND 128, ¶ 16, 736 N.W.2d 788, 795.  A contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting.  N.D.C.C. § 9-07-03; Hendricks Prop. Mgmt. Corp. v. Birchwood Props. Ltd. P'ship, 2007 ND 181, ¶ 12, 741 N.W.2d 461, 465.  When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.  N.D.C.C. § 9-07-04; Hendricks Prop. Mgmt., 2007 ND 181, ¶ 12, 741 N.W.2d at 465.  A contract is interpreted as a whole so as to give effect to every part if reasonably practicable, and each clause is to help interpret the others.  N.D.C.C. § 9-07-06; Hsu v. Marian Manor Apartments, Inc., 2007 ND 205, ¶ 9, 743 N.W.2d 672, 674.  Words in a contract must be construed in their ordinary and popular sense.  N.D.C.C. § 9-07-09; Capital Elec. Coop., 2007 ND

128, ¶ 16, 736 N.W.2d at 795.  Particular clauses of a contract are subordinate to its general intent. N.D.C.C. § 9-07-15; Capital Elec. Coop., 2007 ND 128, ¶ 16, 736 N.W.2d at 795.

If the intent of the parties can be ascertained from the agreement alone, interpretation of the contract is a question of law.  Binek v. Binek, 2004 ND 5, ¶ 13, 673 N.W.2d 594, 600 (quoting Meide v. Stenehjem, 2002 ND 128, ¶ 7, 649 N.W.2d 532, 535).  If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. Capital Elec. Coop., 2007 ND 128, ¶ 17, 736 N.W.2d at 795; see also Kaler v. Kraemer, 1999 ND 237, ¶ 13, 603 N.W.2d 698, 702 ("A written agreement supersedes any prior oral agreements or negotiations between the parties in the absence of any ambiguity.").

## II.  Whether Riske and MJR Breached the Sale and Purchase Agreement

Knutson and Freedom Enterprises essentially allege that Riske and MJR breached the Sale and Purchase Agreement by failing to provide them with full rights of use in the trade names, trademarks, and domain name at issue in the dispute with Widman's.  Specifically, Knutson and Freedom Enterprises contend that Riske and MJR breached warranties which they made in the Agreement regarding the transfer of "good and marketable title" to the property.  On the other hand, Riske and MJR argue that the Widman trade name was never part of the sale, that the sale was restricted only to those rights held by MJR, and that the Agreement expressly disclaimed any warranties.

First, as to the right to use the Widman name, the Court concludes the Agreement did not include the sale of that particular asset.  Section 1 of the Agreement, which lists the assets to be purchased and sold, does not include any mention of the Widman name, but it specifically lists the "Chippers Candy" trade name, the "Chipperz" trademark, and several domain names.  Furthermore,

section 2 of the Agreement explicitly states that the trade name "Widman's Candy" is an excluded asset.

In support of their position that the Agreement did include the Widman name, Knutson and Freedom Enterprises point to the language including "[g]oodwill and all related tangible and intangibles which Seller uses" as part of the purchased assets. However, construing the contract as a whole, the provision for the sale of goodwill and related intangibles cannot reasonably be interpreted to include the Widman name, when that name is specifically excluded from the sale in another section of the Agreement. Similarly, the fact that the parties crossed out section 13 of the Agreement, which stated that the buyer did not have the right to use the name "Widman's Candy," does not change the overall effect of the contract in light of the specific exclusion of the trade name "Widman's Candy" in section 2.

Knutson and Freedom Enterprises also point to evidence outside the Sale and Purchase Agreement, including statements made by Riske during closing about the right to use the Widman name, Knutson's deposition testimony about the intention of the parties, and the sales contract between James Peters and MJR, which explicitly transferred all rights to the name "Widman's Candy Shop." However, because the Court finds that the Agreement, although inartfully drafted, unambiguously excludes the right to use the Widman name, this extrinsic evidence offered by Knutson and Freedom Enterprises is not admissible to contradict the plain language of the Agreement. The Court further concludes that because the sale did not include rights to use the Widman name, Riske and MJR could not have breached the Agreement by failing to transfer full rights in that name.

Even if the Widman name was included in the sale of the business under the Agreement, along with the other intellectual property listed as part of the purchased assets, the Court still concludes that Riske and MJR did not breach the Sale and Purchase Agreement. After carefully reviewing the language of the Agreement and applying the relevant principles of contract interpretation, the Court is convinced that Riske and MJR did not warrant or guarantee full ownership rights in any of the property at issue here.

In support of their argument that Riske and MJR breached the Sale and Purchase Agreement, Knutson and Freedom Enterprises continually focus on the term "good and marketable title." However, the Court must interpret the Agreement as a whole, and particular clauses of a contract are subordinate to its general intent. Here, the Court finds that the Agreement, when read in its entirety, evinces an intent by Riske and MJR to sell only what rights they had in the property, and those rights were sold as is. Section 1, clause 5 of the Agreement provides for the sale of "[a]ll Seller's rights in the North Dakota 'Chippers Candy' trade name and 'Chipperz' trademark including rights in the North Dakota trademark and domain names http://widmans-chipperz.com, http://fargo-candy.com, and www.widmanscandy.com." The "all rights in" language is similar to that of a quitclaim deed, see State Bank & Trust of Kenmare v. Brekke, 1999 ND 212, ¶ 9, 602 N.W.2d 681, 684, which conveys only the right, title, and interest of the grantor, if any. See N.D. Workers Comp. Bureau v. Gen. Inv. Corp., 2000 ND 196, ¶ 12, 619 N.W.2d 863, 868; Gilbertson v. Gilbertson, 452 N.W.2d 79, 81 (N.D. 1990). Even the clause including goodwill as part of the purchased assets, which Knutson and Freedom Enterprises contend includes the Widman name, transfers only "all rights to continue to use the Purchased Assets in the conduct of a going business."

Furthermore, in addition to the "all rights in" language, the Agreement contains a provision disclaiming all warranties relating to the purchased assets. The Agreement specifically provides that all assets are sold "as is and with all faults," and that the buyer has determined to its own satisfaction the condition of the assets, without reliance on the representations of the seller. Construing the "all rights in" language, the disclaimer of warranties, and the "as is and with all faults" language together, the Court concludes that Riske and MJR only agreed to sell whatever interest they may have had in that particular property, and that any interest in that property was sold without warranty or guarantee.

Knutson and Freedom Enterprises point to several other provisions in the Agreement which they argue create a warranty of title. In particular, section 5 of the Agreement provides, "Seller will sell all of the Purchased Assets free and clear of all liens, liabilities and encumbrances." Similarly, section 11 of the Agreement provides that the seller warrants it "has good and marketable title to the Purchased Assets, free and clear of all security agreements, mortgages, liens, pledges, charges or encumbrances." Knutson and Freedom Enterprises essentially argue that the Agreement guaranteed them perfect title in all the purchased assets, including the intellectual property at issue here. However, the Court cannot agree with that interpretation of the Agreement.

The Court recognizes that the Sale and Purchase Agreement in this case is not a model of clarity, particularly with regard to the intermixing of terminology commonly used only in particular areas of the law, such as real estate law. Nevertheless, considering the contract as a whole, the Court concludes that the general intent of the parties was to sell the assets as is and without warranty. The disclaimer of warranties is more in line with the "all rights in" quitclaim-type language relating specifically to the sale of the assets in question. The Court is not persuaded that the provision

15

regarding a warranty of "good and marketable title," which includes a transfer "free and clear of all security agreements, mortgages, liens, pledges, charges or encumbrances," has any application to the assets in intellectual property at issue in this case. The Court simply finds that these real property concepts do not aid in determining the intent of the parties as it relates to the sale of trade names, trademarks, and domain names.

Because Riske and MJR sold only the rights they had in the trade names, trademarks, and domain names listed in the Agreement, and those rights, if any, that were transferred were sold as is, the Court concludes that Riske and MJR did not breach the Sale and Purchase Agreement if they transferred something less than full ownership rights in that property. The Court further concludes that Riske and MJR did not breach the Sale and Purchase Agreement as a matter of law. For all the foregoing reasons, the Court grants summary judgment for Riske and MJR on this claim, and denies summary judgment for Knutson and Freedom Enterprises.

### III. Whether Riske and MJR Have a Duty to Defend under the Terms of the Sale and Purchase Agreement

Knutson and Freedom Enterprises also claim that Riske and MJR had a duty to defend them against the action initiated by Plaintiff Widman's under the terms of the Sale and Purchase Agreement. In particular, Knutson and Freedom Enterprises argue the duty to defend arises out of the language in section 12 of the Agreement. They seek to have Riske and MJR pay their costs of defense, including attorney's fees. Riske and MJR contend that they are not required to defend or indemnify under the terms of the Agreement, and that Knutson and Freedom Enterprises waived any indemnity claim by failing to tender the action for a defense.

>Section 12 of the Sale and Purchase Agreement provides as follows:
>
>Seller will defend, indemnify and hold Buyer harmless from any and all claims and liabilities, losses, expenses, damages, acts or failures to act, including reasonable attorney's fees and court costs, and costs that may arise as a result of any act or omission, or obligation which arose out of Seller's business done prior to the Closing.  Buyer will defend, indemnify and hold Seller harmless from any and all claims, liabilities, losses, expenses, damages, acts or failures to act, including reasonable attorney's fees and court costs, and costs that may arise as a result of any act or omission, or obligation which arose out of business done one [sic] or after the Closing.

Although this is a rather broad indemnification provision, there is a limitation as to both the seller and the buyer.  In particular, the seller's duty to defend and indemnify extends only to claims that arise as a result of any act, omission, or obligation "which arose out of Seller's business done prior to the Closing."  On the other hand, the buyer's reciprocal duty to defend and indemnify extends only to such claims which result from any act, omission, or obligation which arose out of business done after the closing.

Under the plain language of this provision, the Court concludes that MJR and Riske have no duty to defend or indemnify Knutson and Freedom Enterprises.  Plaintiff Widman's action against Knutson and Freedom Enterprises, which was initiated in February 2007, arose as a result of actions taken by Knutson and Freedom Enterprises after closing on the sale of the business.  After Knutson and Freedom Enterprises purchased the business, they used certain trade names, trademarks, and domain names associated with the Widman brand of candy, which prompted Widman's to file suit.  The Court is unpersuaded by Knutson's and Freedom Enterprises' attempts to characterize the actions which gave rise to the Widman's lawsuit as occurring prior to closing.

Because Riske and MJR have no duty to defend Knutson and Freedom Enterprises, it necessarily follows that Knutson and Freedom Enterprises are not entitled to the costs and attorney's fees they seek.  The Court grants summary judgment in favor of Riske and MJR on this claim, and denies summary judgment for Knutson and Freedom Enterprises.

## DECISION

Ultimately, it appears that Knutson and Freedom Enterprises want to have it both ways.  Against the claims of Widman's, they asserted that they owned the disputed intellectual property.  Widman's eventually agreed to pay Knutson and Freedom Enterprises to acquire all rights to the disputed trade names, trademarks, and domain name.  Now Knutson and Freedom Enterprises want to hold Riske and MJR responsible for breach of contract damages and attorney's fees based on a failure to convey rights in the intellectual property that they sold to Widman's.  After applying the relevant principles of contract interpretation, the Court is convinced that the terms of the Sale and Purchase Agreement simply do not support the claims advanced by Knutson and Freedom Enterprises here.

The Motion for Summary Judgment filed by Riske and MJR is **GRANTED**, and the Cross-Motion for Summary Judgment filed by Knutson and Freedom Enterprises is **DENIED**.

**IT IS SO ORDERED.  LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 8th day of August, 2008.

    /s/   Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court